J-A12043-26

2026 PA Super 138

| | |
|---|---|
| ESTATE OF GLENDON SMALLING, BY AND THROUGH SIERRA SMALLING AND SHARESE SMALLING | : IN THE SUPERIOR COURT OF<br>:     PENNSYLVANIA<br>:<br>:<br>:<br>: |
|     v. | :<br>:<br>: |
| 2990 HOLME OPERATING, LLC D/B/A IMMACULATE MARY CENTER FOR REHABILITATION AND HEALTHCARE AND CATHOLIC HEALTH SERVICES, LLC D/B/A CATHOLIC HEALTH GROUP | : No. 2172 EDA 2025<br>:<br>:<br>:<br>:<br>: |
|     Appellants | : |

Appeal from the Order Entered July 29, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  240102492

BEFORE:  LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED JUNE 30, 2026**

Appellants, 2990 Holme Operating, LLC d/b/a Immaculate Mary Center for Rehabilitation and Healthcare, and Catholic Health Services, LLC d/b/a Catholic Health Group (collectively "Appellants"), appeal from the July 29, 2025, order entered in the Court of Common Pleas of Philadelphia County, which denied Appellants' petition to compel arbitration in this wrongful death and survival action brought by Sierra Smalling and Sharese Smalling

_____

[*] Former Justice specially assigned to the Superior Court.

(collectively "Appellees") as co-executors of their mother's estate.[1]  After our careful review, we affirm.

The relevant facts and procedural history are as follows: Appellees initiated this action on behalf of the Estate of Glendon Smalling by filing a complaint on January 22, 2024.  Appellees are the adult children of Glendon Smalling ("decedent"), who was admitted to Appellants' healthcare facility, known as the Immaculate Mary Center for Rehabilitation & Healthcare ("Immaculate Mary Center" or "facility"), from January 20, 2022, to April 21, 2022.  Appellees averred that decedent passed away on January 9, 2023, due to negligent treatment received at Appellants' facility, which allegedly caused decedent to suffer numerous pressure wounds, malnutrition, weight loss, infections, and subsequent hospitalization.  The complaint included counts for professional negligence, a survival action, and a wrongful death action predicated upon Appellees' appointment by the Register of Wills of Philadelphia County to administer decedent's estate.

Appellees filed certificates of merit on March 5, 2024, and on March 22, 2024, Appellants filed preliminary objections.  Therein, Appellants sought to strike all allegations of vicarious liability based on acts of purported agents,

_____

[1] We note that "[a]n order denying a petition to compel arbitration is an interlocutory order appealable as of right." ***Fineman, Krekstein & Harris, P.C. v. Perr***, 278 A.3d 385, 389 (Pa.Super. 2022) (footnote omitted).

- 2 -

who were not specifically identified in the complaint, and strike count IV of the complaint relating to the wrongful death action based on Appellees' alleged failure to sufficiently plead specific facts connecting decedent's death to care received at the Immaculate Mary Center. The preliminary objections presented no claim or argument related to arbitration.

On April 11, 2024, Appellees filed an amended complaint, which contained more specific language in paragraph 10 averring that decedent's death resulted from care she received from Appellants during her stay at the Immaculate Mary Center.  On May 2, 2025, Appellants filed renewed preliminary objections to the amended complaint raising the same issues presented in their initial preliminary objections, as well as seeking to strike Appellees' wrongful death count on the additional grounds that the amended complaint did not include the addresses of the alleged beneficiaries. The renewed preliminary objections presented no claim or argument related to arbitration.

The trial court held a case management conference, and on May 7, 2024, the trial court issued an order setting a discovery deadline of August 4, 2025, a pre-trial motion deadline of October 6, 2025, and a trial readiness date of February 2, 2026.

On May 22, 2024, Appellees filed a second amended complaint, which included addresses for the alleged wrongful death beneficiaries.  On June 21, 2024, Appellants filed an answer with new matter averring they "incorporated

by reference all applicable defenses provided under the Health Care Services Malpractice Act, 40 P.S. § 1301.101 *et seq.*, and the Medical Care Availability and Reduction Error Act ("M-Care")." Appellants' Answer with New Matter, filed 6/21/24. Appellants also alleged a lack of negligence, a lack of causation, the barring of claims against Appellants based on actions of a non-party, and the limit of any potential damages to the amount the decedent paid for the medical services. Neither the answer nor the new matter raised any claim or argument regarding arbitration.

After the pleadings closed, on January 22, 2025, the parties attended a one-year status conference. On March 21, 2025, Appellants filed a petition to compel arbitration. Therein, Appellants averred, for the first time, that, on February 10, 2022, Appellee Sharese Smalling, in her capacity as decedent's representative and power of attorney, executed an Admission Agreement for decedent's stay at the Immaculate Mary Center. Appellants averred that the Admission Agreement included a voluntary agreement to binding arbitration for claims including, but not limited to, personal injury and medical malpractice. Thus, Appellants claimed the dispute at issue was within the scope of the arbitration provision, which was explicitly set forth in the Admission Agreement.

Moreover, Appellants alleged that, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(6), claims for enforcement of the arbitration agreement may be asserted by preliminary objections or by a petition to compel

arbitration. Appellants claimed the arbitration agreement had never been rescinded and was enforceable under the Federal Arbitration Act, 9 U.S.C. § 2, and the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S.A. § 4303. Consequently, Appellants claimed that, since the arbitration provision was valid and the dispute fell within the scope of the provision, the trial court did not have subject matter jurisdiction, and, thus, the dispute must be submitted to arbitration.

On April 10, 2025, Appellees filed a response in opposition to Appellants' petition to compel arbitration. Therein, Appellees averred Appellants waived their ability to enforce the arbitration clause. Specifically, Appellees averred that the parties invested time and resources in preparing for litigation, and, thus, Appellees would be prejudiced by the duplicative effort, added costs, and undue delay of submitting this case to arbitration. Appellees contended that Appellants litigated the claims subject to the arbitration provision in the trial court, engaged in discovery, participated in the judicial process to win favorable rulings, discovered Appellees' strategic legal position, and failed to seek to compel arbitration in their preliminary objections. Appellees contended that, by waiting fourteen months after the initial complaint was filed to request arbitration, engaging in discovery, and failing to raise the issue in their preliminary objections, Appellants implicitly waived their right to move for arbitration.

Moreover, Appellees contended the arbitration provision was invalid, and in any event, the dispute did not fall within the scope of the arbitration provision. In this vein, Appellees alleged the arbitration provision was unenforceable under the doctrines of unconscionability. Additionally, Appellees contended the arbitration agreement was unenforceable because Appellants failed to prove Sharese Smalling had agency to sign the Admission Agreement.

On July 29, 2025, the trial court denied Appellants' petition to compel arbitration, and on August 12, 2025, Appellants filed a notice of appeal. The trial court directed Appellants to file a Pa.R.A.P. 1925(b) statement, and Appellants timely complied. The trial court filed a responsive Rule 1925(a) opinion on December 9, 2025. Specifically, the trial court explained that it denied Appellants' petition to compel arbitration because Appellants waived the opportunity to enforce the arbitration clause by failing to promptly raise the issue of arbitration and availing themselves of the judicial process.[2]

On appeal, Appellants set forth the following issues in their "Statement of the Questions Involved" (verbatim):

1. Whether the Trial Court erred in denying the Petition to Compel Arbitration when there was a valid, binding, enforceable, Arbitration Agreement?

---

[2] In the alternative, the trial court opined that, if this Court finds Appellants did not waive their right to seek enforcement of the arbitration provision, then the matter should be remanded to the trial court for discovery related to Appellee Sharese Smalling's agency to contract on behalf of decedent.

- 6 -

2. Whether the Trial Court erred in not permitting the parties to develop a full record as to Arbitration enforcement by ordering discovery on the issue of Arbitration based upon the Petition to Compel Arbitration?

Appellants' Brief at 4 (suggested answers omitted).

Initially, we note that, intertwined within their first issue, Appellants contend the trial court erred in holding they waived their claim of arbitration by failing to raise it in a timely manner. **See** Appellants' Brief at 30-41.

Our review of an order denying a petition to compel arbitration is "limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion." **Goral v. Fox Ridge, Inc.**, 683 A.2d 931, 933 (Pa.Super. 1996).

> It is well-settled that, although as a matter of public policy, our courts favor the settlement of disputes by arbitration, the right to enforce an arbitration clause can be waived. **O'Donnell v. Hovnanian Enterprises, Inc.**, 29 A.3d 1183, 1187 (Pa.Super. 2011)[(quotation marks and quotation omitted)]. A party that avails itself of the judicial process by attempting to win favorable rulings from the judicial system following the filing of a complaint waives the right to proceed through arbitration. **Stanley-Laman Group, Ltd. v. Hyldahl**, 939 A.2d 378, 387 (Pa.Super. 2007).
>
> When deciding whether a party accepted judicial process to constitute waiver of a claim to arbitration, courts assess whether the party: (1) failed to raise the issue of arbitration promptly; (2) engaged in discovery; (3) filed pre-trial motions that do not raise the issue of arbitration; (4) waited for adverse rulings on pre-trial motions before asserting arbitration; **or** (5) waited until the case is ready for trial before asserting arbitration. **O'Donnell**, **supra**. Significantly, a party "cannot avail itself of the judicial process and then pursue an alternate route when it receives an adverse judgment. To allow litigants to pursue that course and thereby avoid the waiver doctrine and our rules of court is to advocate judicial inefficiency; this we are unwilling to do." **Samuel J. Marranca General Contracting Co. v. Amerimar Cherry Hill**

- 7 -

*Associates*, 610 A.2d 499, 502 (Pa.Super. 1992). Nevertheless, "the mere filing of a complaint or answer without resulting prejudice to the objecting party will not justify a finding of waiver of the right to arbitration." *Keystone Tech. Group, Inc. v. Kerr Group, Inc.*, 824 A.2d 1223, 1226 (Pa.Super. 2003).

*DiDonato v. Ski Shawnee, Inc.*, 242 A.3d 312, 318-19 (Pa.Super. 2020) (bold in original) (citations omitted).

In the case *sub judice*, the trial court concluded that, assuming, *arguendo*, the arbitration provision was valid, Appellants waived their right to compel arbitration by availing themselves of the judicial process. **See** Trial Court Opinion, filed 12/9/25, at 8-10. Specifically, regarding the first factor, the trial court found Appellants failed to raise the issue of arbitration promptly. **See id.** at 8 (citing **DiDonato**, **supra**). In this vein, the trial court held "Appellants did not seek to compel arbitration for fourteen months after the onset of this case, a significant delay directly comparable to the defendants' failure to raise the issue of arbitration for eleven months in **DiDonato**, **supra**[.]" **Id.**

Our review of the record confirms that Appellees filed their original complaint on January 22, 2024, their amended complaint on April 11, 2024, and their second amended complaint on May 22, 2024. Appellants filed preliminary objections to the original complaint and the amended complaint; however, neither of their preliminary objections acknowledged the existence of a binding arbitration agreement nor sought to compel arbitration. Moreover, Appellants filed an answer with new matter to Appellees' second

amended complaint, and, again, they failed to mention the existence of any binding arbitration agreement. Thereafter, on March 21, 2025, approximately nine months after filing their answer with new matter, Appellants raised for the first time their claim of arbitration when they filed their motion to compel arbitration. As the trial court indicated, "the instant case was never stayed or dismissed, and Appellants had an uninterrupted fourteen-month period in which the arbitration agreement could have been raised at any time." *Id.* at 8. We agree with the trial court that, as it relates to the first factor, Appellants did not promptly raise the issue of arbitration. *See DiDonato*, *supra*. *See also O'Donnell*, *supra* (holding the fact the appellants allowed the preliminary objection process to proceed for months demonstrated a failure to promptly raise the issue of arbitration); *Watson v. Terrace at Chestnut Hill Senior Living*, 1965 EDA 2022, 2023 WL 4395129 (Pa.Super. filed 7/7/23) (unpublished memorandum)[3] (holding the appellant did not raise the issue of arbitration promptly when it first sought to compel arbitration approximately nine months after the appellee's original complaint was filed and several months after filing an answer to the appellee's amended complaint).

---

[3] Pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. We find *Watson* to be persuasive in this matter.

Regarding the second factor, the trial court found that Appellants participated in discovery, again without any mention of the arbitration agreement. Relevantly, the trial court found that Appellants served written discovery requests upon Appellees on May 30, 2024, roughly four months after the initiation of this action. **See** Trial Court Opinion, filed 12/9/25, at 8. Specifically, Appellants served interrogatories and a request for production of documents on Appellees. **See id.** We agree with the trial court that Appellants' "serving of discovery requests four months after the onset of litigation evidences a conscious decision by Appellants to litigate the merits of the case in this forum." **Id. See O'Donnell**, 29 A.3d at 1189 (holding that, where the defendants demonstrated a conscious engagement with the judicial process with the arbitration agreement in their possession, they waived the right to enforce the arbitration agreement).

Regarding the third and fourth factors, pertaining to pre-trial motions, the trial court relevantly held:

> Appellants' filing of preliminary objections that did not raise the issue of arbitration evidenced conscious engagement with the judicial process. As in **O'Donnell**, Appellants raised demurrers seeking to, *inter alia*, strike a count of the operative complaint (specifically, count IV-wrongful death action) for legal insufficiency. Appellants then raised similar demurrers a second time after Appellees amended their complaint as of right and mooted the first set of preliminary objections pursuant to Pa.R.Civ.P. 1028(c)(1). The **O'Donnell** Court explained that the defendants successfully obtaining dismissal of a single count of the complaint via preliminary objection constituted substantive engagement with the judicial process that, along with the temporal delay in seeking to compel arbitration, justified waiver. **Id.** at 1189. Appellants' preliminary objections in this case raise

- 10 -

precisely the same issues. It is worth noting that Appellants did not obtain a ruling from the [trial] court sustaining their objections in this case; but rather, they elected to file an answer with new matter after Appellees amended their complaint for a second time in response to the second set of preliminary objections. Even if Appellants did not obtain dismissal of a cause of action via court order, Appellants' filing of an answer following amendment of the complaint indicates satisfaction with the outcome of the pleading process—otherwise, Appellants could have reasserted the same objections. Appellants' subsequent filing of new matter that raised affirmative defenses and failed to mention arbitration further indicates a choice to litigate this matter on the merits in a judicial forum.

Trial Court Opinion, filed 12/9/25, at 9 (citation to record omitted).

We find no abuse of discretion in this regard. Simply put, Appellants actively participated in the judicial process and did not seek to compel arbitration until after waiting to see the outcome of their preliminary objections. *See O'Donnell*, *supra*; *GE Lancaster Investments, LLC v. American Exp. Tax & Business Services, Inc.*, 920 A.2d 850, 855 (Pa.Super. 2007) (holding that, where a party attempts to win favorable rulings from the trial court, it indicates an intent to avail oneself of the judicial process).

Moreover, we note that the record reveals Appellants engaged in the one-year case management conference and pre-trial scheduling orders before filing their petition to compel arbitration. The trial court expended judicial resources in issuing orders, including setting the deadline for discovery and pre-trial motions, as well as a trial readiness date. Here, Appellants filed their

first request for arbitration just months before the discovery deadline. *See* Trial Court Opinion, filed 12/9/25, at 3.

Additionally, we note Appellees have been prejudiced by Appellants' tactical maneuvers because, if the arbitration provision had been timely raised, Appellees would have been spared the time, effort, and expense of filing amended complaints. Simply put, as the trial court found:

> The totality of the circumstances presents a situation similar to *O'Donnell*, *supra*, and *DiDonato*, *supra*—a significant delay of over one year in seeking to compel arbitration and active litigation of non-arbitration issues through the pleadings….[T]his case proceeded well beyond the pleadings with Appellants raising the issue of arbitration for the first time four months before the close of a nearly year-and-a half long discovery period. Appellees were prejudiced by the fourteen-month delay in proceedings, and by the expenses incurred in litigating multiple rounds of preliminary objections and exchanging initial pre-trial discovery. Upon consideration of these circumstances and the factors detailed in *O'Donnell* [and *DiDonato*], the [trial] court found that Appellants waived their right to enforce the arbitration clause.

Trial Court Opinion, filed 12/9/25, at 9-10.

Based on the aforementioned, we conclude the trial court's findings are supported by substantial evidence, and we discern no abuse of discretion in the trial court's holding that Appellants availed themselves of the judicial process, thus waiving any right to arbitration.[4] *Goral*, *supra*. Accordingly,

_____

[4] We note that, on appeal, Appellants summarily claim they raised the issue of arbitration as "promptly as possible," and they "did not actively litigate this matter." Appellants' Brief at 34, 38. However, as the trial court found, the certified record belies this claim.

we affirm the trial court's order denying Appellants' petition to compel arbitration on this basis.[5]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/30/2026

_____

[5] In light of our analysis *supra*, we need not address Appellants' remaining claims. Nevertheless, we note that, to the extent Appellants contend it is necessary for this Court to remand to the trial court because the record is not sufficiently developed to determine whether Appellants waived their right to seek arbitration, as suggested by our discussion *supra*, Appellants are mistaken.